## LEE ET AL. *v.* HILLS ET AL.

CONTRACT.—*Statute of Frauds.*—*Memorandum, Reformation of.*—*Parol Evidence of Mistake Inadmissible.*—*Set-Off.*—In a suit upon account, for goods sold and delivered, an answer was filed alleging that the plaintiffs, H. Bros., by their agent, E. F. L., executed and delivered a written memorandum of

goods they agreed to deliver to the defendants, A. P L. & Bro., of which the following is a copy: "Terre Haute, Ind., —— —, 187-, A. P. L. & Bro." (Under this caption a list of the articles, with their specific and aggregate price, is given.) "Freight. Ship Emp. Line, 60 days' acceptance. [Signed,] H. Bros., per E. F. L., April 21st, 1875 ;" that said goods were not delivered to the defendants, by reason whereof they had been damaged in a certain sum ; that said memorandum was written on a bill-head of the defendants, and by mistake the word "sold" was omitted from before the firm name of defendants. Prayer for a reformation of the memorandum, an offer to set off an amount of the damages equal to the plaintiffs' claim, and a demand for judgment for the residue.

*Held,* that the contract is within the statute of frauds, and that the memorandum is not a "note or memorandum in writing of the bargain," within the meaning of the statute.

*Held,* also, that parol evidence was not admissible to supply the omitted word in the memorandum.

BILL OF EXCEPTIONS.—*Filing of.*—*Practice.*—Where special leave beyond the term is not given by the court to reduce exceptions to writing, they can not be made part of the record by a bill of exceptions signed and filed at a subsequent term.

SAME.—*Must be Signed by Judge who tries Cause.*—Where a change of venue from the regular judge of a circuit is taken, and another judge is appointed to try the cause, who presides at the trial and renders judgment in said cause, he alone is authorized to sign any bill of exceptions therein.

DEPOSITIONS.—*Motion to Strike Out.*—Where a motion is made, as an entirety, to strike out a certain question and the answer thereto in a deposition, and some of the matter to which the motion is directed is free from objection and pertinent to the issues in the cause, it will be correctly overruled.

EVIDENCE.—*Delivery.*—*Sale.*—The delivery of goods pursuant to a written order for their shipment, and the quality and kind of the goods, can be proved by parol evidence.

From the Vigo Circuit Court.

*R. Dunnigan, S. C. Stimpson, W. R. Stokes, G. W. Kleiser, J. H. Kleiser* and *E. E. Bassett,* for appellants.

*J. G. Williams, S. C. Davis* and *S. B. Davis,* for appellees.

HOWK, J.—This was a suit by the appellees, against the appellants, upon an open account, for personal property alleged to have been sold and delivered by the former to the latter, at their special instance and request. With their

complaint, there was filed an affidavit on behalf of the appellees, to the effect that their claim was just; that the affiant believed they ought to recover a certain sum, the amount of their said account, the particulars of which were filed with their complaint, with legal interest thereon, and that the affiant was informed and believed that the appellants were about to sell, convey and otherwise dispose of their property, subject to execution, with the intent to delay and defraud the appellees out of their claim. With this affidavit, there was also filed in said court the proper undertaking, to the approval of the clerk, for an order of attachment against the property of the appellants.

To the appellees' complaint and their affidavit in attachment, the appellants answered in four paragraphs, of which the first was a general denial of the complaint; the second was a denial of the grounds for the attachment stated in said affidavit; and each of the third and fourth paragraphs set up affirmative matters, by way of recoupment or counter-claim.

The appellees' demurrer to the fourth paragraph of the answer, for the alleged want of sufficient facts therein, was sustained by the court, and to this decision the appellants excepted, and to the third paragraph of the answer the appellees replied by a general denial.

The issues joined were tried by a jury, and a verdict was returned for the appellees, assessing their damages in the full amount of the account in suit. The appellants' motion for a new trial having been overruled, and their exception saved to this ruling, judgment was rendered by the court, on the verdict, from which judgment this appeal is now prosecuted.

The appellants have here assigned, as errors, the following decisions of the court below:

1. In sustaining the appellees' demurrer to the fourth paragraph of their answer;

2.  In overruling their motion for an order for the inspection and copies of all letters, telegrams and postal-cards and other orders, relating to this action, written or sent by them to the appellees, and then in the possession of the appellees' attorneys ; and,

3.  In overruling their motion for a new trial.

1.  In the fourth paragraph of their answer, the appellants alleged, in substance, that they were fruit merchants, doing business under the firm name of A. P. Lee & Bro.; that the appellees, by their agent, on the 21st day of April, 1875, executed and delivered a written memorandum of goods they agreed to deliver to the appellants, on the fastest freight line leaving the City of New York, which was the "Empire Line," a copy of which memorandum was filed with and made a part of said paragraph ; that the appellees' agent made a mistake in writing said agreement, which was written on a bill-head of the appellants, and left out the word " sold," before their firm name at the top of said bill-head ; that it was intended, understood and agreed, that said contract should be so executed, and the appellants said that they did not discover the mistake till some time after the appellees' agent had left the city of Terre Haute, where said contract was made; that, by the terms of said agreement, the appellees were to deliver to the appellants, in the city of Terre Haute, the goods therein named, on sixty days' acceptance, the same to be ordered at once and shipped by the "Empire Line," a corporation at that time shipping goods from the city of New York to the city of Terre Haute; that the appellants ordered the said goods, which the appellees refused to deliver to the appellants ; that if the appellees had shipped the said goods as ordered, at the time they were so ordered, they would have arrived at the city of Terre Haute, on or about the 1st of May, 1875, at which time Prolema lemons were worth $6 per box, and Messina lemons were

worth $7 per box; Messina oranges were worth $4.50 per box, Prolema, oranges were worth $5 per box, Maple oranges were worth $4 per box, and Imperial oranges were worth $6 per box; that said agreement was written out by the appellees' agent, who make use of commercial abbreviations; these abbreviations, and what they mean, are then stated, and it is alleged that all of said abbreviations were so understood by the parties to said agreement; and the appellants averred that, by reason of the appellees' failure to ship and deliver the said goods, they were damaged in the sum of three hundred dollars. Wherefore the appellants prayed that said written memorandum might be corrected and reformed, by the decree of the court, agreeably to the intention, understanding and agreement of the parties, by inserting the word "sold" before their firm name of A. P. Lee & Bro. in said bill; and of their said damages they offered to set off an amount equal to the appellees' claim against them, and demanded judgment for one hundred dollars, the residue.

The following is the form of the memorandum in which the alleged mistake occurred, as the same appears in the record:

"Terre Haute, Ind.,———187 ,———A. P. LEE & BRO."
(Under this caption, there is a given list of the numbers of boxes of the different kinds of lemons and oranges, the price per box of each kind and the aggregate price of each kind, and closing as follows:)
"Freight.    Ship Emp. Line, 60 days' acceptance.
(Signed,)                              "HILLS BROS.,
"April 21st, 1875.                      Per E. F. LOCK."

It is very clear, we think, that the alleged mistake in this memorandum can not be corrected, and the writing can not be reformed, in the manner asked for by the appellants in this action. In the fourth paragraph of their answer, the appellants allege that they had purchased of the appellees

certain goods, consisting of lemons and oranges, for the aggregate price of four hundred and ninety dollars, on a credit of sixty days. The appellants did not claim, that they had received any part of the goods so purchased by them, or that they had given something in earnest to bind the bargain, or in part payment, or even their sixty days' acceptance. Their alleged contract for the purchase of said goods from the appellees, therefore, comes fairly within the provisions of section 7 of "An act for the prevention of frauds and perjuries," etc., approved June 9th, 1852, and was invalid and of no binding force, "unless some note or memorandum in writing of the bargain" was made, and signed by the appellees, or by some person thereunto by them lawfully authorized. 1 R. S. 1876, p. 504. The memorandum counted upon in the fourth paragraph of the appellants' answer was not a "note or memorandum in writing of the bargain" which the appellants claimed they had made with the appellees. It is impossible to discover, from the terms of this memorandum, that any "bargain" had been made between the appellants and the appellees, of and concerning the goods therein mentioned and described. Nor can it be discerned, from the language used in said memorandum, if it be conceded that there was or had been a "bargain" by and between the said parties, and of and concerning the said goods, which of the said parties were the vendors or bargainors, and which were the purchasers or bargainees, of the said goods. If, as the appellants claim, the bargain by and between the parties was, that the appellees sold the said goods to the appellants, it is very certain that the memorandum, of which a copy was filed with and made a part of the fourth paragraph of the answer, was not a "note or memorandum in writing" of any such "bargain ;" and if, as we may assume, the said memorandum was the only "note or memorandum in writing" relating to or connected with

the alleged "bargain," made or attempted to be made by and between the said parties, it is equally certain, we think, that there was no note or memorandum in writing made of the alleged "bargain," and signed by the appellees, or by any person thereunto by them lawfully authorized, and that, for this reason, the alleged contract for the sale of said goods was invalid, illegal and of no binding force.

In the case of *Ridgway* v. *Ingram*, 50 Ind. 145, the requisites of the "note or memorandum in writing," referred to in the statute of frauds, were considered by this court; and in that case it was said by WORDEN, J., in delivering the opinion of the court, that "A memorandum, in order to be sufficient within the statute, must state the contract with such reasonable certainty, that its terms may be understood from the writing itself, without recourse to parol proof." In the case cited, the following statement of the law, upon the point under consideration, is quoted with approval from 2 Kent Com. 511 : "Unless the essential terms of the sale can be ascertained from the writing itself, or by a reference contained in it to something else, the writing is not a compliance with the statute; and if the agreement be thus defective, it can not be supplied by parol proof, for that would at once introduce all the mischiefs which the statute of frauds and perjuries was intended to prevent."

In 3 Parsons on Contracts, p. 13, it is said : " As to the question what the written agreement must contain, the general answer is, all that belongs essentially to the agreement, and more than this is not needed; nor can parol evidence be received to supply anything which is wanting in the writing, to make it the written agreement on which the parties rely." *Norris* v. *Blair*, 39 Ind. 90; *Baldwin* v. *Kerlin*, 46 Ind. 426.

In the case at bar, it is claimed by the appellants, that the memorandum, on which they rely in the fourth para-

graph of their answer, did not contain all that belonged essentially to the alleged contract between them and the appellees, in this, that it did not show that the appellees had sold the appellants the goods mentioned in said memorandum. It is further claimed, that the omission of the fact of sale from the memorandum was the result of mistake; but it is immaterial how the omission occurred, as it is very clear that, under the law, parol evidence could not be received to supply the omitted fact in the memorandum.

The court committed no error, in our opinion, in sustaining the appellees' demurrer to the fourth paragraph of the appellants' answer.

2. The second error, assigned by the appellants on the record of this cause, is the decision of the court below in overruling their motion for an order for the inspection and copies of all letters, telegrams, postal-cards and other orders, relating to this action, written or sent by them to the appellees, and then in the possession of the appellees' attorneys. The point is made by the appellees' counsel in argument, and we think it is well made, that this alleged error is not shown in or by the record of this cause, on file in this court. The entries in this cause on the order book of the circuit court, as the same are copied into the record, fail to show that the appellants made any such motion for the inspection and copies of all letters, etc., as stated in this assignment of error, or that any such motion was decided by the court, or that they excepted to any such decision. The only evidence of any such motion or decision or exception thereto, to be found in the record, is contained in what purports to have been a bill of exceptions in the case, and, as such, copied into the record. This apparent bill of exceptions was filed in the court below, on the 28th day of October, 1876, and it appeared to have been signed by the Honorable Chambers Y. Patter-

son, the judge of said court, " on the 24th day of October, 1876, at the September term, 1876, of said court." It was recited in said alleged bill of exceptions, in substance, that the appellants made the aforesaid motion in the court below, at its April term, 1876, to wit, on the 10th day of June, 1876 ; that the court then and there overruled the said motion and refused to make the order moved for, and that the appellants at the time excepted to this decision. It did not appear, either in this pretended bill of exceptions or elsewhere in the record, that the appellants, at the time said motion was so overruled, or at any other time, either asked for or were granted "special leave of the court," beyond the term, "to reduce the exception to writing." In section 343 of the practice act, it is provided that " The party objecting to the decision must except at the time the decision is made ; but time may be given to reduce the exception to writing, but not beyond the term, unless by special leave of the court." 2 R. S. 1876, p. 176. It seems to us, therefore, that, in the absence of any special leave of the court, giving the appellants time beyond the term to reduce their exceptions to writing, the decision of the court, at its April term, 1876, overruling the aforesaid motion of the appellants, and their exception to the decision, were not made parts of the record of this cause by the pretended bill of exceptions, signed and filed therein at the September term, 1876, of said court.

In another view of this question, we think that this pretended bill of exceptions did not become a part of the record of this cause. As we have seen, the decision of the court in overruling the said motion of the appellants was made at the April term, 1876, of the court, on the 10th day of June, 1876. The record shows, that at the said April term, 1876, of the court, on the 13th day of June, 1876, on the appellants' application, the venue of this cause was changed from Judge Chambers Y. Patterson, the reg-

ular judge of said court, on account of his alleged "interest and bias," and the "Honorable Solon Turman, Judge of the 13th Judicial Circuit of this State," was then and there duly called and appointed to try this cause. It is further shown by the record, that Judge Turman accepted such appointment, and on the trial of this cause, and when judgment was rendered therein on the 23d day of September, 1876, he was the judge of the court below. It seems to us, that after this cause was so removed from before Judge Patterson, and after Judge Turman, as judge of the court below, assumed jurisdiction of the case, Judge Turman alone was authorized by law to sign any bill of exceptions therein. Judge Patterson's connection with, or authority in or over, said cause was permanently dissolved.

For the reasons given, the second alleged error, in our opinion, is not apparent in the record.

3. Among the causes for a new trial, assigned by the appellants in their motion therefor, were certain alleged errors of law occurring at the trial and excepted to, in overruling their motions to strike out certain parts of certain depositions. It appears from a bill of exceptions in the record, that, on the trial of this cause, the appellees read in evidence to the jury the depositions of themselves, John Hills and William Hills; and that, after they had rested their case, the appellants called as a witness the appellant Chauncey B. Lee, who testified " that he resided in the city of Terre Haute, and plaintiffs resided in the city of New York; that the goods mentioned in the complaint were ordered by him, and that all the orders were in writing, and were sent by him through the mails to the plaintiffs." Upon this evidence, the appellants moved the court to strike out the following part of question 4, and the answer thereto, in each of the said depositions: " How and when were the goods delivered ? " and the answer thereto as follows: " The articles were

delivered, as directed by the defendants, either to the Empire Line or to the Baltimore and Ohio Railroad Company."

The reasons assigned for this motion were, that it then appeared from the evidence of said Chauncey B. Lee, "that the orders for the goods in controversy were in writing, and were the best and only proper evidence of the facts testified to by the plaintiffs." It seems to us that the court committed no error in overruling this motion of the appellants. The manner and the time of the delivery of the goods were facts which had an existence, if they existed at all, entirely independent of any written order, and as such they might be proved, without the production of the order, by any competent witness cognizant of such facts. The question objected to certainly did not, in terms, call for the contents of any written instrument, and was unobjectionable both in form and substance. The answers stated facts, which also existed, if at all, independently of any writing, with the exception of the expression, "as directed by the defendants." If the appellants had limited their motion to the striking out of the expression last quoted, from the answers of the deponents, the court would no doubt, and very properly, have sustained such limited motion. But the motion was an entirety, and some of the matter it was directed to was free from objection and pertinent to the issues in this cause, and, therefore, we think that the motion was correctly overruled.

Upon the same evidence, and for the same reasons, the appellants also moved the court to strike out the following part of the answers of the deponents to the 5th question, to wit: "They" (the goods) "were of the kind and quality ordered." It is very certain, we think, that the written order, if produced, would not have proved the fact as to "the kind and quality" of the goods actually delivered. This fact was outside and independent of the

written order; for it often happens that there is a wide difference, as to "kind and quality," between the goods ordered and the goods delivered. If the written order was in evidence, the answers last objected to were material and pertinent; if the orders were not in evidence, the answers proved nothing, in regard to "kind and quality," and were entirely harmless. Certainly, the answers did not show the "kind and quality" mentioned in the written order, and did not give the contents of the order. The court did not err in overruling the motion to strike out the part objected to, of the answers to the 5th question.

These are all the questions discussed by the appellants' counsel, arising under the alleged error of the court 'in overruling the motion for a new trial. In our opinion the motion was correctly overruled.

The judgment is affirmed, at the appellants' costs.